GREENWICH INSURANCE COMPANY *v.* STATE.

Opinion delivered January 28, 1905:

1. APPEAL—QUESTION NOT RAISED BELOW.—In a suit on a policy of fire insurance defendant cannot on appeal rely, as a defense *pro tanto,* upon a violation of the 85 per cent. co-insurance clause, if no such issue was raised by the pleadings or instructions in the court below. (Page 78.)

2. FIRE INSURANCE—IRON SAFE CLAUSE—KEEPING BOOKS.—An instruction submitting to the jury, upon sufficient evidence, the question whether a set of books proved to have been kept by the assured was a compliance with the "iron safe clause" of the policy sued on was properly given. (Page 79.)

3. SAME—WAIVER OF PROOF OF LOSS.—Evidence that the defendant insurance company's adjuster denied all liability under the policy, or at least all save a small sum admitted to be due, justified a finding of the jury, under proper instructions, that the proof of loss was waived. (Page 79.)

4. EVIDENCE—MEMORANDA TO REFRESH MEMORY.—Inventories prepared by a witness showing the amount and value of lumber destroyed by fire, introduced not in lieu of the requirement of the policy to keep

and produce inventories, but merely to refresh the memory of the witness, were admissible. *Phoenix Ins. Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187, followed.  (Page 80.)

5.  INSURANCE COMPANY—NEW BUILDING—INCREASED RISK.—A change in the manner of storing lumber in a yard covered by· a policy of insurance, whereby the lumber was placed under a newly-erected shed, instead of in the open air, will not invalidate the policy if the hazard of the risk contracted against was not thereby increased.  (Page 80.)

6.  SAME—KNOWLEDGE OF AGENT.—An insurance company is bound by the knowledge which its agent had at the time of the contract of insurance sued on was entered into.  (Page 81.)

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

This  suit was brought by the State for the use of Frank J. Murray against the Greenwich Insurance Company and its sureties to recover on two policies of insurance for the sum of $1,000 each, issued on the following property:  "Stock of lumber, laths and shingles, dressed and undressed, while contained in the one-story, shingle-roof frame shed, situated on block 71, and on their open yards situated in blocks 71 and 72, Pine Bluff, Arkansas." The complaint alleges that on December 25, 1900, while said policies were in force, all the property situated in the above frame shed was totally destroyed by fire, and that in the open yards was partially destroyed.  That the value of said property so destroyed was at least $6,000, and that plaintiff had other insurance aggregating $3,000, in addition ·to the policies issued by defendant insurance company.

The insurance company answered, denying that it ever issued any policy covering the property alleged to have been damaged or destroyed by fire, that plaintiff had fully complied with the conditions of the said policies, including notice of loss, or that the insurance company had refused to accept said notice, and that it was indebted to appellee in the sum demanded; and alleging that Murray had failed to file proofs of loss and to keep a set of books, as required under the terms of the said policies.

The policy was of the standard form, including both the ordinary iron-safe clause and the 85 per cent. co-insurance and value clause, which was in the following language:

"It is hereby expressly stipulated that if at the time of fire the whole amount of insurance on the property covered by any item of this policy shall be less than 85 per cent. of the actual cash value thereof, this company shall, in case of loss or damage, be liable for only such portion of such loss or damage as the amount insured under said item shall bear to 85 per cent. of the actual cash value of the property covered by such item; *provided,* that in case the whole amount of insurance on the property covered by any item shall exceed 85 per cent. of the actual cash value of the same, this company shall not, under said item, be liable to pay more than its *pro rata* share of 85 per cent. of the actual cash value of such property; and, should the whole insurance on any item at the time of fire exceed the said 85 per cent., a *pro rata* return of premium on such excess of insurance from the time of the fire to the expiration of this policy shall be made upon the surrender of this policy."

Plaintiff testified that at the time the first policy in defendant's company was taken out there was only one shingle-roof shed in his lumber yard, situated in block 71, in Pine Bluff, the rest of the yard being open; that subsequently, but before the second policy was taken out, he built and used as part of the yard a box shed with asbestos fire-proof roofing; that afterwards he took out the second policy in defendant's company; that defendant's agent inspected the yard after the second shed was built, and knew it was used for storing lumber; that the loss under the asbestos shed was $5,436.42, and outside this shed $425.10; that after the fire he notified defendant's agent; that the adjuster came, and plaintiff presented him a list, but he refused to furnish plaintiff a blank for proof of loss, and denied liability; that plaintiff kept a set of books, as required, in an iron safe after night.

At defendant's request, the court instructed the jury as follows:

"The court instructs the jury that the policy sued on herein contains the following covenants:

" 'The assured shall take a complete itemized inventory of stock on hand at least once in each calendar year; and unless such inventory has been taken of the property covered by this policy within twelve calendar months prior to the date thereof, one shall be taken in detail within thirty days after the date thereof.

" 'And the assured shall keep a set of books which shall clearly and plainly represent a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of the inventory; and upon the plaintiff's failure to keep and perform all of the said covenants, then the said policy shall be null and void.'

"So, therefore, if you believe from the evidence that the said plaintiff has failed, refused or neglected to comply substantially with either or all of the said covenants, then the plaintiff cannot recover in any sum whatever herein, and you will find for defendant."

At plaintiff's request the court charged as follows:

"1.    The jury are instructed that, although the notice of loss must be given by plaintiff to defendant insurance company as required, yet the defendant insurance company may waive any delinquency on the part of the insured as to the form of notice in this respect, and such a waiver may be inferred from any conduct on the part of the insurers clearly inconsistent with any intention to insist upon the failure by the insured to give such notice in the form provided in the policy.

"3.    Where it is denied by the defendant insurance company that the property shown by the evidence to have been destroyed by fire was covered by the policy, and the jury find from the evidence that there was no written application for the policy or policies under which the defendant insurance company makes such denial; if you further find from the evidence that the agent of the insurance company has given a description of the property from his knowledge obtained by personal examination of the property for the purpose of effecting the insurance thereon, which description he, the said agent, inserted in the policy, then said defendant insurance company cannot take advantage of any inaccuracy in the language of the description of said property so inserted in the policy to avoid payment for the loss of property as aforesaid,

unless there is evidence of an attempt on the part of the plaintiff to mislead said defendant, or its agent, in this respect, or the conduct of the plaintiff was such as to mislead said defendant or agent. And knowledge of the insurance company or agent of inaccuracy or incompleteness in the description of the property at the time when the insurance is effected, if such is shown by the testimony, and you so find, will estop the defendant from setting up any such inaccuracy or incompleteness of description in defense in this case.

"4. The jury are instructed that no alteration made on the premises where the property insured by the plaintiff was situate would avoid his policy, nor can his recovery be defeated by means of alterations, unless the effect of the same was such as to increase the risk or hazard of loss by fire to the property insured. If the jury find from the evidence that the defendant insurance company made the policy sued upon, and the property insured was destroyed by fire, as stated in the complaint, and plaintiff complied with the agreements and conditions in the policy to be complied with on his part, or that the same were waived by defendant's agents, they will find for the plaintiff."

There was a verdict for plaintiff in the sum of $2,015.66. Defendant appealed.

All other facts necessary to its understanding are stated in the opinion of the court.

*Austin & Danaher,* for appellant.

The policy sued on contained what is known as the co-insurance clause, which will be enforced. 53 Ark. 353; 58 Ark. 565; 61 Ark. 207; 62 Ark. 43; 65 Ark. 335; 57 Ark. 279; 58 Ark. 277; 61 Ark. 509; 62 Ark. 348; 65 Ark. 54. If such a stipulation is violated, it creates a forfeiture. 44 S. W. 60; 62 Texas, 464; 151 U. S. 462. Such a stipulation is reasonable and valid. 61 Texas, 287; 43 Oh. St. 394; 118 Mass. 465; 20 C. C. A. 397; 86 Ky. 230; 8 Mont. 419; 36 Md. 208; 93 N. W. 19; 61 Mich. 333; 101 Ala. 634; 51 S. W. 898; 13 S. W. 1017; 61 Tex. 287; 64 Tex. 578; 50 S. W. 180; 90 Wis. 138; 72 S. W. 144. No books were kept, as stipulated in the contract. 21 S. W. 468; 24 S. W. 425; 33 S. W. 840; 44 S. W. 464; 33 S. W. 428; 61 Ark. 214; 52 Ark.

356. There was no proof of loss or waiver. 62 Ark. 47; 53 Ark. 215; 52 Ark. 11; 53 Ark. 494; 67 Ark. 589; 64 Ark. 594; 65 Ark. 290; 8 R. I. 277. The provision relating to proofs of loss is material, and must be complied with. 62 Fed. 222; 63 N. W. 194; 133 N. Y. 356; 84 Wis. 208, 78. There was no waiver of proofs of loss. 84 Wis. 80; 136 N. Y. 219; 141 N. Y. 219; 62 Mass. 479; 75 Wis. 198. The inventories were improperly admitted in evidence. 65 Ark. 240; 63 Ark. 203; 22 Fed. 226; 90 Tenn. 212. Appellee is bound by the terms of the contract. 50 Ark. 406; 58 Ark. 277; 71 Fed. 476. Parol negotiations leading up to a written contract are merged into the written contract. 16 Wall. 564; 91 U. S. 291; 95 U. S. 474; 96 U. S. 544; 101 U. S. 93; 104 U. S. 30, 252; 106 U. S. 252; 1 Sup. Ct. 313; 127 U. S. 607; 134 U. S. 306; 141 U. S. 518; 6 Allen, 552; 131 Mass. 384; 1 Rice, Ev., 304; 61 Fed. 280. Appellant is not liable for lumber destroyed in asbestos-roof shed. Ostrander, Ins. 706; 20 Fed. 240; 93 Fed. 731; 101 U. S. 96; 34 U. S. App. 598. Parol evidence is inadmissible to contradict the provisions of the policy. 51 Ark. 441; Rich. Ins. 55. When an insured accepts a policy, he accepts it according to the terms and descriptions mentioned in the policy. 69 Tex. 353; 133 N. Y. 356; 85 Wis. 193; 36 Wis. 599; 65 Wis. 321; 70 Wis. 1; 16 C. C. A. 45; 31 S. W. 566; 58 Ark. 277; 67 Tex. 71; 50 Ga. 404; 71 Mich. 414; 68 Wis. 298; 102 Pa. St. 17; 23 La. Ann. 219.

*W. F. Coleman* and *Chas. T. Coleman,* for appellee.

A party on appeal cannot contend for a theory different from that raised in the trial court. 64 Ark. 252; 46 Ark. 103; 62 Ark. 76; 51 Ark. 351; 56 Ark. 263; 54 Ark. 442; 55 Ark. 163; 51 Ark. 441; 71 Ark. 552; 70 Ark. 195; 66 Ark. 219; 71 Ark. 427; 64 Ark. 254, 305; 63 Ark. 268; 55 Ark. 163. The books were properly kept. 58 Ark. 573. Proof of loss was waived. 112 U. S. 709; 53 Ark. 501. The inventories were properly admitted. 63 Ark. 203. The lumber under the asbestos-roof shed was covered by the policies. 51 Atl. 898; 78 Mass. 265; 46 Atl. 902; 71 Wis. 33; 45 Ill. 301; 165 Mass. 541; 87 N. W. 932; 83 N. Y. Sup. 220; 97 N. W. 702; 74 Mass. 566; 81 Mich. 556; 41 Minn. 299; 51 Minn. 24; May, Ins. § § 142, 262; 1 Daly, 8; 47 Ala. 387; 61 Pa. 91; 71

S. W. 720; 85 Fed. 129; 71 S. W. 512; 35 Atl. 209; 50 Mo. 112; 109 Ind. 273; 168 Pa. 234; 53 Ark. 222.

Hill, C. J. This is a suit against a fire insurance company and the sureties on its bond to the State of Arkansas. Two policies, covering the same property, are sued upon. They were issued April 20, 1900, and October 8, 1900, respectively, and are each for the sum of $1,000, and are for loss against fire, for the period of one year, of the property described, which is a stock of lumber in the shed and on the open yards of the appellant's lumber plant in the city of Pine Bluff. During the life of the policies, on December 25, 1900, the lumber in the shed and a large quantity on the yards were totally destroyed by fire.

The Reporter will set forth in the statement of facts the substance of the pleadings and evidence, and the instructions which are drawn in question.

The trial resulted in a verdict and judgment in favor of appellee, Murray, for the face of the policies, and the insurance company has appealed.

1. The appellant claims that the verdict is excessive, to the amount of $866.28, in this:

Attached to and a part of the policy is a clause described as the "85 per cent. co-insurance clause," the object of which, appellant asserts, is to compel the insured to carry insurance to the amount of 85 per cent. of the value of the property insured, and in the case of partial loss the amount is paid by contribution from the various insuring companies, and, had this clause been complied with under the facts, the extent of the appellant's liability would have been $866.28 less than the face of the policies. The answer of the insurance company denied liability, and pleaded various alleged violations of other clauses of the policies, and did not put this in issue. No instructions were asked on this clause, and no point made involving it until after verdict, when, in motion for a new trial, it was assigned as error that the verdict was excessive in this amount, and here it is contended that it is excessive because of a violation of this clause. If the appellant is right in its contention, then it had a defense, *pro tanto,* to the suit, and a failure to plead it waived it. This court has frequently decided that when a battery is masked in the trial court, it cannot be opened in this court.

2. The policy contained the standard clause requiring the insured to keep a set of books, which shall clearly and plainly present a complete record of the business transacted. It is asserted that this clause was violated, and that was put in issue on the trial. This court held in *Western Assurance Company* v. *Altheimer,* 58 Ark. 573, that it was proper to leave to the jury, under instructions explaining the terms the contract imposed, the question whether the books kept, from an inspection of them and other evidence on the subject, were such a "set of books" as the contract contemplated. The books in this case were brought into court for inspection, if desired, and evidence sustaining and impeaching their sufficiency was adduced. The appellant asked, and the court gave, an instruction on this subject telling the jury that a failure to comply with this clause of the contract avoided the policy. Therefore appellant cannot question the propriety of sending that issue to the jury, nor the adverse finding by it, which was, however, supported by the evidence.

3. It is admitted that the clause in the policy requiring the insured to make, within 60 days after the fire, a complete inventory, etc., commonly called the "proof of loss," was not complied with. The insured claimed that its performance was waived, and the insurance company took issue upon this question. It is thoroughly established that denial of all liability and refusal to pay is a waiver of this requirement of the policy. Such conduct is a declaration that the payment will not be made, even if the proof of loss is furnished; and the law does not require the insured to perform a vain act. *Knickerbocker Life Ins. Co.* v. *Pendleton,* 122 U. S. 696; *German Ins. Co.* v. *Gibson,* 53 Ark. 494; *Phoenix Ins. Co.* v. *Minner,* 64 Ark. 590; *Planters, etc., Ins. Co.* v. *Loyd,* 67 Ark. 584. It is insisted, however, that the facts do not bring this case within the rule; that the adjuster merely refused to furnish the blanks for the proofs to be made upon, and denied liability as to part of the loss, not all, and that the insurance company could insist upon all its defenses without waiving this. Such is the conclusion to be drawn from the appellant's witnesses. On the other hand, Murray testified positively that all liability was denied by the adjuster representing appellant; and the adjuster wrote a letter to the effect that, if Murray would accept $71.11, which he claimed was all that was due him, he

would send proof of loss for signature, and that he proposed "to stand pat on these figures." Murray had already refused this sum, and, if the company was liable for any more, it was a vain act for him to send the statement, and an unnecessary one if he would accept this offer, as the company would furnish the proof in that event ready for his signature. The court submitted this issue to the jury, under proper instructions, and their verdict that the proof of loss was waived is fully sustained by the evidence.

4. It is contended that improper evidence was admitted in form of inventories prepared by the foreman of the lumber yard, showing the lumber destroyed. They were introduced, not, as appellant contends, in lieu of the requirement of the policy to keep and produce inventories, but merely to refresh the memory of the witness as to the amount and value of the lumber destroyed. They were made by him the day following the fire, and were merely memoranda strengthening his recollection. The evidence was within the rule declared by this court on a similar question in *Phoenix Insurance Company* v. *Public Parks Amusement Company,* 63 Ark. 187.

5. The policies covered lumber in a frame shingle-roof shed and on the open yards. The first was written in April, and in October the insured telephoned the insurance agent to write another $1,000 policy on his lumber, and the agent wrote it with the same description of the property insured which was in the first one. The shingle-roof shed was floored, partially inclosed, and contained racks for storing lumber. After April, and before October, the insured erected on his open yards, close to his mill, and over the most valuable part of his lumber, an asbestos roof. This was not constructed as the shed was. It was not floored nor inclosed, nor did it contain racks for lumber. The lumber piles were merely reduced from 20 to 12 feet in height, and uprights erected, upon which the asbestos roof was placed. There was a conflict in the evidence as to whether the insurance agent, whose duty it was to inspect property insured, had knowledge of this change in the manner of storing the lumber and the erection of this roof; and also a conflict as to whether this roof increased the hazard of the risk contracted against by the insurance company. The question of increased risk only arises as to the first policy, as there was no change after the second was written. In the fourth

instruction the court properly sent this issue to the jury, and it has, on legally sufficient evidence, decided that the risk was not increased. As to the second policy, the question is whether it included the lumber under the asbestos roof. As stated, there was a conflict in the evidence as to whether the agent knew this roof was over the valuable lumber piles. In reporting on issuing the second policy, the agent said he had that day inspected the risk, and that the total value of the property insured was $13,000. The evidence shows that the total value of all the lumber was $12,000, of which $6,000 was under the asbestos roof. The court sent this question to the jury under an instruction telling them that if the agent inserted the description in the policy from his own knowledge of the property while inspecting it for insuring it, the insurance company can not take any advantage of an inaccuracy in the description, unless the insured misled him by his conduct into making such inaccuracy. And any inaccuracy known to the agent at the time of affecting the insurance as to the description of the lumber insured would estop the company from asserting it after the loss. This was as favorable a statement as the insurance company was entitled to, and the finding against it on this issue can not be disturbed. Questions are raised as to some parts of other instructions; but, on the whole case, the court is of opinion that the jury was properly instructed and had legally sufficient evidence before it upon each issue to justify its verdict.

The judgment is affirmed.